MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: SHARON E. FRASE (SF-4906)
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2329



08 CV 01511

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                 Plaintiff,         :
                                    :
        - v -                       :
                                    :        VERIFIED COMPLAINT
The Painting Known as "Hannibal,"   :
    by Jean-Michel Basquiat,        :        08 Civ.
                                    :
                 Defendant-in-rem.  :
                                    :
-----------------------------------x

        Plaintiff United States of America, by its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its complaint alleges as follows:

                I.  **JURISDICTION AND VENUE**

        1.  This is an action brought by the United States of

America pursuant to 18 U.S.C. § 545 and 19 U.S.C. § 1595a(c)

seeking the forfeiture of all right, title and interest in

personal property described as the painting known as "Hannibal"

by the artist Jean-Michel Basquiat, from 1982, an acrylic, oil

stick and paper collage on canvas, mounted on tied wood,

approximately 60 x 60 inches with an appraised value of

approximately eight million dollars (the "defendant-in-rem

Hannibal").

    2.    This Court has jurisdiction pursuant to 28 U.S.C.
§§ 1355 and 1395.  Venue is proper because the defendant-in-rem
Hannibal was found in the Southern District of New York.

    3.    On November 7, 2007, agents from United States
Immigration and Customs Enforcement, Department of Homeland
Security ("ICE"), seized the defendant-in-rem Hannibal from 1166
Second Avenue, New York, New York.  The defendant-in-rem Hannibal
is in the custody of United States Customs and Border Protection.

## I.   **PROBABLE CAUSE FOR FORFEITURE**

    4.    On or about October 10, 2007, Vanessa Gonçalves
Liete De Souza, Brazilian Federal Police Commissioner and Chief
of INTERPOL Brasil, sent a request to INTERPOL United States,
seeking the assistance of United States authorities with the
location and seizure of the defendant-in-rem Hannibal.  In
addition, on or about November 1, 2007, the Government of Brazil
submitted a letters rogatory request to the United States
pursuant to the Treaty between the United States and Brazil on
Mutual Legal Assistance in Criminal Matters (together with the
INTERPOL request the "Letters Rogatory Request"), requesting
similar assistance.  Information provided in connection with the
Letters Rogatory Request includes the following:

    a.    In or around 2005, Brazilian federal police
and authorities from Brazil's Central Bank began investigating
the collapse of Banco Santos, S.A. ("Banco Santos"), including

the role of the founder and former President of the bank, Edemar Cid Ferreira ("Edemar"). Edemar and other Banco Santos officers were charged with money laundering, criminal association, bank fraud and conspiracy in the 6th Federal Criminal Court Specialized in Crimes Against the National Financial System and Money Laundering of Sao Paulo/SP (the "Sao Paulo Court").

       b.   From February 2005 up to and through February 2006, a Sao Paulo Court judge issued orders to search, seize and confiscate assets that Edemar, his associates, and members of his family had acquired with unlawfully obtained funds (the "Seizure Orders"). The assets identified in the Seizure Orders included artwork valued approximately between $20 million to $30 million.

       c.   The Seizure Orders authorized the search of certain locations where authorities had identified artwork subject to seizure, including Edemar's home in the Morumbi neighborhood of Sao Paolo, the main offices of Banco Santos, and a reserve holding facility of a company called the Cid Ferreira Collection Empreendimentos Artisticos Ltda, now known as Cid Ferreira Collection Empreendimentos S/A ("Cid Collection"). According to the Sao Paulo Court, Edemar and his group were suspected of using the Cid Collection to purchase art as part of their money laundering scheme.

       d.   The Seizure Orders identified the fraudulently obtained artwork from an electronic databank of art

3

works acquired by the Cid Collection, as well as the testimony of a witness who saw certain pieces in Edemar's house.

       e.   One of the artworks identified in the Seizure Orders was a painting entitled "Hannibal," by the artist Jean Michel Basquiat.  The description from the Cid Collection databank, as translated in part from Portuguese, was as follows:

> PAINTING WITH SEVERAL INSCRIPTIONS AND SYMBOLS
> WITH HEAVY ORANGE (BACKGROUND), BLACK AND BLUE AS
> PREDOMINANT COLORS.  ON LEFT SUPERIOR CORNER, SOME
> SORT OF THREE-POINTED CROWN IN BLACK WITH YELLOW
> AND BLUE OUTLINES; ON RIGHT SUPERIOR CORNER, A
> YELLOW STAR WITH BLACK OUTLINES; IN THE RIGHT
> INFERIOR CORNER A SHAPE THAT REMINDS A SKULL WITH
> BLUE, MAGENTA, BLACK AND YELLOW OUTLINE AND LINES.
> INSCRIPTIONS AS "HANNIBAL" (AMONG OTHER WORDS AND
> SYMBOLS), APPEAR SPREAD ALL OVER THE PAINTING.
> THE CANVAS HAS BEEN STRETCHED OUT WITH FOUR SMALL
> ROLLS TIED ON EACH OTHER, MAKING THE PAINTING'S
> FORMAT IRREGULAR.
> BACK: 4 WOODEN LOCKS HAVE BEEN NAILED ON CORNERS,
> WHERE THE "CHASSIS" ROLLS ARE OVERLAPPED.  ON
> THESE LOCKS THE FOLLOWING LABELS HAVE BEEN STUCK:
> LEFT SUPERIOR CORNER: "21 HSARTSERVICE – VIENNA –
> AUSTRIA B098 JEAN-MICHEL BASQUIAT HANNIBAL;"

"JEAN-MICHEL BASQUIAT "HANNIBAL" 1982 ACRYLIQUE,

CRAYON GRAS ET PAPIER COLLÉ SUR TOILE MONTÉE SUR

CHÂSSIS EN CROIX 152.5x152.5 CM;" "QUINTANA

GALLERY - 3200 PONCE DE LEON BOULEVARD CORAL

GABLES, FLORIDA 33134 JEAN MICHEL BASQUIAT

"HANNIBAL" ACRYLIQUE, OILSTICK AND PAPER COLLAGE

ON CANVAS MOUNTED ON TIED WOOD 60x60 IN.

(152.40x152.40 CM.)"

RIGHT SUPERIOR CORNER: "HAMILTONS JEAN-MICHEL

BASQUIAT HANNIBAL 1982 ACRYLIC, OILSTICK AND PAPER

COLLAGE ON CANVAS MOUNTED ON TIED WOOD SUPPORTS

60x60 INCHES CERTIFICATE ISSUED 11/12/97, N.60250

HG11657."

LEFT INFERIOR CORNER: "TONY SHAFRAZI GALLERY JEAN-

MICHEL BASQUIAT HANNIBAL 1982 ACRYLIC, COLORED

OILSTICKS & PAPER COLLAGE ON CANVAS WITH NAILS,

TWINE & EXPOSED WOOD SUPPORTS 60"x60" 152.4x152.4

CM STOCK# JB.5521 119 WOOSTER STREET NEW YORK NY

10012 TEL. 212 274 9300 FAX 334 9499."

      f.   When Brazilian authorities executed one of

the early Seizure Orders, they found that a number of very

valuable works of art were missing, including "Hannibal."

      g.   After a search of the museums and

institutions in Brazil, the Sao Paulo Court ordered that a

request be made to INTERPOL for international assistance in
locating the missing artwork.  The painting is listed on the
INTERPOL database under file number 2006/36298.

5.    Upon information and belief, in December 2006,
Edemar was sentenced to 21 years' imprisonment for crimes against
the national financial system and money laundering.  The Sao
Paulo Court also ordered the forfeiture of the assets that were
seized pursuant to the Seizure Orders, as well as the artwork
listed in the Seizure Orders that the authorities could not find.

6.    On or about August 21, 2007, Mark III, a courier
company, imported the defendant-in-rem Hannibal from London,
England, through United States Customs and Border Protection
("Customs") at John F. Kennedy International Airport in Jamaica,
New York.  Mark III arranged to move the painting into the
country pursuant to an order from its customer Globenet B.V.
Holland.  Upon information and belief, Globenet B.V. Holland was
contracted to ship the painting by DHL, on behalf of Crown
Relocations, Netherlands.

7.    The customs laws require owners of merchandise and
their agents to provide certain documentation when shipping their
merchandise to the United States:

a.    Sections 1481, 1484 and 1485 of Title 19
provide the requirements by which merchandise may be imported
into the United States.  Under Section 1484, an importer or its

agent must "make entry" by filing the required documentation with Customs to allow Customs to determine whether the imported merchandise can be released.

b.   Section 1485(a) provides:

Every importer of record making an entry under the provisions of section 1484 of [Title 19] shall make and file or transmit electronically therewith, . . . a declaration under oath, stating--

(1) Whether the merchandise is imported in pursuance of a purchase or an agreement to purchase, or whether it is imported otherwise than in pursuance of a purchase or agreement to purchase;

(2) That the prices set forth in the invoice are true, in the case of merchandise purchased or agreed to be purchased; or in the case of merchandise secured otherwise than by purchase or agreement to purchase, that the statements in such invoice as to value or price are true to the best of his knowledge and belief;

(3) That all other statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct; and

(4) That he will produce at once to the appropriate customs officer any invoice, paper, letter, document, or information received showing that any such prices or statements are not true or correct.

c.   Section 128.25 of Title 19 of the Code of Federal Regulations ("CFR") identifies the criteria for merchandise that must be declared pursuant to formal entry procedures under Section 1484.  Formal entry is required for all shipments over the $2,000 monetary limit set out for informal

7

entry procedures, and any shipment for which the informal entry procedures may not be used.

       d.   Section 128.24 of Title 19 of the CFR states that informal entry procedures may generally be used for shipments not exceeding $2,000 in value which are imported by express consignment operators and carriers.  Informal entry procedures still require the filing of customs documentation unless the merchandise is valued below $200.

       e.   Under Section 1321(a) of Title 19, United States Code, and Section 128.24(e) of Title 19, CFR, shipments valued at $200 or less can be passed into the United States free of duty and tax.

       f.   Under the Customs laws, although original artwork is not subject to duty, the correct value of artwork must be declared and formal entry must be made for any artworks whose value exceeds the exemptions granted under the informal entry process.

       8.   Upon information and belief, the defendant-in-rem Hannibal is valued at approximately eight million dollars.  Upon information and belief, the painting therefore was subject to the formal entry requirements set forth in the Customs laws.

       9.   The documentation that accompanied the defendant-in-rem Hannibal included an invoice, a house waybill, and a master air waybill.  The invoice described the shipment as:

    a.    a "painting (natural)";

    b.    with a value of "USD 100,00" and the following declaration: "VALUE ONLY FOR CUSTOMS PURCH. NOT FOR RESALE. FREE OF CHARGE.  NO COMMERCIAL VALUE";

    c.    with "the Netherlands" as the country of origin;

    d.    sent from "Crowne Relocations" in the Netherlands.  Upon information and belief, Crowne Relocations is a relocation company;

    e.    bearing an illegible signature.

10.  The house waybill and master air waybill that accompanied the defendant-in-rem Hannibal included, among other information, the items set forth in paragraph 9(a)-(d) above.  Upon information and belief, the house waybill and the master air waybill were prepared on the basis of the information in the invoice.

11.  The paperwork related to the shipment did not identify (i) the title of the painting; (ii) the fact that the painting was by Basquiat, a prominent modern artist; (iii) the true value of the painting; (iv) the fact that the painting originated in the United States; (v) Edemar, Cid Ferreira or Banco Santos as owners.  Upon information and belief, no

declaration or other Customs forms were submitted in connection with the shipment.

12.  Because the painting had a declared value of $100, it was not inspected and no formal entry was required.

13.  On or about November 7, 2007, ICE agents viewed the defendant-in-rem Hannibal at a warehouse facility located at 1166 2nd Avenue, New York, New York.  Also on November 7, 2007, the painting was viewed by David Rogath, of the Chalk and Vermillion Gallery, in Greenwich, Connecticut, who stated his expert opinion that the artwork was the painting known as "Hannibal" by the artist Jean-Michel Basquiat.  Also on November 7, 2007, the painting was viewed by art dealer J. Carter Tutweiler, who stated his expert opinion that the artwork was the painting known as "Hannibal" by the artist Jean-Michel Basquiat.

### III.  CLAIM FOR FORFEITURE

14.  Incorporated herein are the allegations contained in paragraphs 1 through 13 of the verified complaint.

15.  The statutory provisions pursuant to which the defendant-in-rem Hannibal is subject to seizure and forfeiture are as follows:

a.   18 U.S.C. § 542 provides criminal penalties for:

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration,

affidavit, letter, paper, or by means of any false
statement, written or verbal, or by means of any
false or fraudulent practice or appliance, or
makes any false statement in any declaration
without reasonable cause to believe the truth of
such statement, or procures the making of any such
false statement as to any matter material thereto
without reasonable cause to believe the truth of
such statement, whether or not the United States
shall or may be deprived of any lawful duties.

b.    18 U.S.C. § 545 provides criminal penalties

for:

Whoever knowingly and willfully, with intent to
defraud the United States, smuggles, or
clandestinely introduces of attempts to smuggle or
clandestinely introduce into the United States any
merchandise which should have been invoiced, or
makes out or passes, or attempts to pass, through
the customhouse any false, forged, or fraudulent
invoice, or other document or paper; or

Whoever fraudulently or knowingly imports or
brings into the United States, any merchandise
contrary to law, or receives, conceals, buys,
sells, or in any manner facilitates the
transportation, concealment, or sale of the such
merchandise after importation, knowing the same to
have been imported or brought into the United
States contrary to law.

18 U.S.C. § 545.

c.    Section 545 subjects to forfeiture

"merchandise introduced into the United States in violation of

this section. . ."

d.    19 U.S.C. § 1595a(c) provides in pertinent

part:

Merchandise which is introduced or attempted to be
introduced into the United States contrary to law
shall be treated as follows:

11

shall be treated as follows:
(1) The merchandise shall be seized and forfeited
if it --
    (A) is stolen, smuggled, or clandestinely
imported or introduced.

16.    The defendant-in-rem Hannibal is subject to
forfeiture pursuant to 18 U.S.C. § 545 because there is probable
cause to believe that the defendant-in-rem Hannibal was
introduced into the United States in violation of 18 U.S.C. §§
542 and 545.

17.    The defendant-in-rem Hannibal is further subject to
forfeiture pursuant to 19 U.S.C. 1595a(c) because there is
probable cause to believe that it is stolen, smuggled or
clandestinely introduced property which was introduced into the
United States contrary to law.

18.    By reason of the above, the defendant-in-rem
Hannibal became and is subject to forfeiture to the United States
of America.

WHEREFORE, plaintiff United States of America prays
that process be issued to enforce the forfeiture of the
defendant-in-rem Hannibal and that all persons having an interest
in the defendant-in-rem Hannibal be cited to appear and show
cause why the forfeiture should not be decreed, and that this
Court decree forfeiture to the defendant-in-rem Hannibal to the
United States of America for disposition according to law, and
that this Court grant plaintiff such further relief as this Court

may deem just and proper, together with the costs and disbursements of this action.


Dated:  New York, New York
        February 13, 2008


                        MICHAEL J. GARCIA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the Plaintiff
                        United States of America

             BY:        _____
                        SHARON E. FRASE (SF-4906)
                        Assistant United States Attorney
                        One St. Andrew's Plaza
                        New York, New York 10007
                        Telephone:  (212) 637-2329


13

**VERIFICATION**

STATE OF NEW YORK              )
COUNTY OF NEW YORK             )   ss:
SOUTHERN DISTRICT OF NEW YORK  )

      SETH TAYLOR, being duly sworn, deposes and says that he is a special agent with United States Immigration and Customs Enforcement, and as such has responsibility for the within action, that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge information and belief.

      The source of his information and the grounds of his belief are official records and files of the United States and information obtained directly by deponent during his investigation.

SETH TAYLOR
Special Agent
United States Immigration
    and Customs Enforcement

Sworn to before me this
13th day of February, 2008

NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010