COPY

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: SHARON E. FRASE (SF-4906)
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
Telephone:  (212) 637-2329

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
                                   :
UNITED STATES OF AMERICA,
                                   :
              Plaintiff,
                                   :          SECOND AMENDED
                                              VERIFIED COMPLAINT
         - v -                     :
                                              08 Civ. 1511 (RJS)
                                   :
The painting known as "*Hannibal*"
by the artist Jean-Michel Basquiat,:
from 1982, an acrylic, oil stick
and paper collage on canvas,       :
mounted on tied wood,
approximately 60 x 60 inches with  :
an appraised value of
approximately eight million        :
dollars;
                                   :
The painting known as "*Modern
Painting with Yellow Interweave*"  :
by the artist Roy Lichtenstein, an
abstract painting with geometric   :
shapes, including two "half-rings," 
filled with yellow, with black     :
outlines, and with a black
vertical strip dividing the        :
painting in two "halves," signed
on the back, with a value of at    :
least approximately one million,
five hundred thousand dollars;     :

The painting known as "*Figures    :
dans une structure*" [Figures in
a structure], by the artist        :
Joaquin Torres-Garcia, signed in
the upper left corner, dated in    :
the upper right hand corner, and
purchased in 2004 for
approximately two hundred thirty



thousand dollars;                          :

The painting known as "*Composition* :
*abstraite*" [Abstract composition]
by the artist Serge Poliakoff,        :
painted in 1969, an oil painting
on burlap, with abstract geometric :
shapes in red, blue, yellow and
brown, approximately 162 x 135        :
centimeters, sold at auction in
2004 for more than three hundred  :
seventy-eight thousand dollars;

                                            :

The sculpture known as "*Roman*
*togatus*" by an unidentified        :
artist, a masculine figure wearing
a toga, on a circular base,            :
without head or hands, with an
appraised value of approximately   :
one hundred thousand dollars;

                                            :

   Defendants-in-rem.

                                            :
----------------------------------x

   Plaintiff United States of America, by its attorney,

Michael J. Garcia, United States Attorney for the Southern

District of New York, for its second amended verified complaint

alleges as follows:

## I.   JURISDICTION AND VENUE

   1.   This is an action brought by the United States of

America pursuant to 19 U.S.C. § 1595a(c), 18 U.S.C. § 545, and 18

U.S.C. § 981(a)(1)(C), seeking the forfeiture of all right, title

and interest in the following personal property:

    The painting known as "*Hannibal*" by the artist
    Jean-Michel Basquiat, from 1982, an acrylic, oil
    stick and paper collage on canvas, mounted on tied
    wood, approximately 60 x 60 inches with an
    appraised value of approximately eight million
    dollars (the "Defendant-in-rem Basquiat");

The painting known as "*Modern Painting with Yellow Interweave*" by the artist Roy Lichtenstein, an abstract painting with geometric shapes, including two "half-rings," filled with yellow, with black outlines, and with a black vertical strip dividing the painting in two "halves," signed on the back, with a value of at least approximately one million, five hundred thousand dollars (the "Defendant-in-rem Lichtenstein");

The painting known as "*Figures dans une structure*" [Figures in a structure], by the artist Joaquin Torres-Garcia, signed in the upper left corner, dated in the upper right hand corner, and purchased in 2004 for approximately two hundred thirty thousand dollars (the "Defendant-in-rem Torres-Garcia");

The painting known as "*Composition abstraite*" [Abstract composition] by the artist Serge Poliakoff, painted in 1969, an oil painting on burlap, with abstract geometric shapes in red, blue, yellow and brown, approximately 162 x 135 centimeters, sold at auction in 2004 for more than three hundred seventy-eight thousand dollars (the "Defendant-in-rem Poliakoff"); and

The sculpture known as "*Roman togatus*" by an unidentified artist, a masculine figure wearing a toga, on a circular base, without head or hands, with an appraised value of approximately one hundred thousand dollars (the "Defendant-in-rem *Togatus*").

(collectively, the "Defendant-in-rem Artworks")

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1355 and 1395.   Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

## II.  PROBABLE CAUSE FOR FORFEITURE

3.   This action arises from an ongoing investigation by agents with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), of the suspected smuggling into the United States of multiple valuable artworks.  These artworks previously were part of a collection acquired by Brazilian Edemar Cid Ferreira ("Edemar"), the founder and former president of Banco Santos, S.A. ("Banco Santos").  In 2004, Brazilian authorities began investigating Edemar and other Banco Santos officers, later charging them with money laundering, criminal association, bank fraud and conspiracy in the 6th Federal Criminal Court Specialized in Crimes Against the National Financial System and Money Laundering of Sao Paulo/SP (the "Sao Paulo Court").

4.   Beginning in February 2005, the Sao Paulo Court issued orders to search, seize, confiscate and forfeit the assets that Edemar, his associates, and members of his family had acquired with unlawfully obtained funds from the Banco Santos fraud (the "Seizure Orders").  The assets identified in the Seizure Orders included a large collection of valuable artwork from the Cid Ferreira Collection Empreendimentos Artisticos Ltda, now known as Cid Ferreira Collection Empreendimentos S/A (the "Cid Collection").  According to the Sao Paulo Court, Edemar and his group were suspected of using the Cid Collection to purchase art as part of their scheme.

4

5.    The Seizure Orders identified the fraudulently obtained artwork from an electronic databank of art works acquired by the Cid Collection (the "Cid Databank"), as well as the testimony of a witness who saw certain works in Edemar's Sao Paolo home.

6.    Among the artworks described in the Cid Databank (translated from Portuguese) and identified in the Seizure Orders were the following:

> **Work of Art Registration: I0003130**
> Purchase Date:
> Purchase Document:
> Author: Basquiat, Jean-Michel
> Name: Painting – "Hannibal"
> Description: Painting with several inscriptions and simbols [sic] with heavy orange (background), black and blue as predominant colors.  On left superior corner, some sort of three-pointed crown in black with yellow and blue outlines; in the right inferior corner a shape that reminds a skull with blue, magenta, black and yellow outline and lines. Inscriptions as "Hannibal" (among other words and simbols [sic]), appear spread all over the painting.  The canvas has been stretched out with four small rolls tied on each other, making the painting's format irregular.
>
> Back: 4 wooden locks have been nailed on corners, where the "chassis" rolls are overlapped.  On these locks the following labels have been stuck
> > Left superior corner: "21 Hsartservce - Vienna - Austria B098 Jean-Michel Basquiat Hannibal;" "Jean-Michel Basquiat "Hannibal" 1982 Acrylique, crayon gras et papier collé sur toile montée sur châssis en croix 152.5x152.5 cm;" "Quintana gallery – 3200 Ponce de Leon Boulevard Coral Gables, Florida 33134 Jean Michel Basquiat "Hannibal" Acrylique, oilstick and paper collage on canvas mounted on tied wood 60x60 IN. (152.40x152.40 CM.)"

Right superior corner: "Hamiltons Jean-Michel Basquiat Hannibal 1982 acrylic, oilstick and paper collage on canvas mounted on tied wood supports 60x60 inches certificate issued 11/12/97, N.60250 HG11657."

Left inferior corner: "Tony Shafrazi Gallery Jean-Michel Basquiat Hannibal 1982 acrylic, colored oilsticks & paper collage on canvas with nails, twine & exposed wood supports 60"x60" 152.4x152.4 CM Stock# JB.5521 119 Wooster Street New York, NY 10012 Tel. 212 274 9300 Fax 334 9499."

**Work of Art Registration: I0003902**
Purchase Date: 13/11/2003
Purchase Document: Invoice – 21/11/2003
Sale N07940 – lot 194
Author: Lichtenstein, Roy
Name: Painting – "Modern Painting with Yelloe [sic] Interweave"
Description: Abstract painting with geometric shapes; two "half-rings" filled with yellow, with black outlines, located on right inferior half of the painting. Other areas on yellow, red and blue (particularly on left vertical half, where blue starts in a "pixeled" way until it becomes close) are predominant. A black vertical strip crosses the painting right on its asle [sic], "dividing it" in two halfs [sic].
Value: US $590,400.00

**Work of Art Registration: I0003987**
Purchase Date: 13/01/2004
Purchase Document: Invoice date 13/01/2004
Initial price: US$ 230,000.00
Author: Torres-Garcia, Joaquim [sic]
Name: Painting – "Figures dans une Structure" [Figures in a structure]
Description: Signature, left superior corner
Dated on right superior corner
Value: US$ 210,000.00

**Work of Art Registration: I0003984**
Purchase Date: 05/02/02004
Purchase Document: Invoice date 05/02/2004
Auction number: 6886, lot 124
Acquired for 217,192.00 GB
Author: Poliakoff, Serge

6

Name: Painting – "Composition abstraite"
Description: Abstract geometric shapes, on red,
blue and yellow collors [sic].   Signed, Serge
Poliakoff, left inferior corner
BACK: Inscription with wax on superior horizontal
lock, "2020350/59 CTP" (on yellow) and "VL 626
PWA." (on white).  Several labels sticked [sic] on
chassis locks, as it follows:
> – Superior horizontal lock, "Christie's
> Photographed 6886 D+8(?) full + tranny (?)
> 13065591 (bar code)"
> – Superior horizontal lock, right corner
> "6886 5th FEBRUARY 2004 Lot 124 {bar code}
> 13065591".
> – Superior central horizontal lock,
> "Expositions Natural Le Coultre SA Geneva
> Switzerland, Artist: Serge Poliakoff Title:
> "Composition Abstraite" HST Signee 3500/59
> 160x130 cm".
> – Superior central horizontal lock,
> (hand-written), "Galerie mamede on 13
> Composition 1969".
> – Superior central horizontal lock,
> little blue label, "13".
Value: US $393,552.00

**WORK OF ART REGISTRATION: O0001737**
Purchase Date:
Purchase Document: Invoice N° TVA 35324095470 –
billing 2003/481
Document of gallery with description and pictures
Acquired for € 650,000.00
Author: Unidentified
Name: Sculpture - Roman togatus
Description: Headless masculine figure dressing a
toga, on a circular base. The statue does not have
head nor hands.
Value: US $772,960.00

7.    When Brazilian authorities executed one of the

Seizure Orders, they found that a number of very valuable works of

art were missing (the "Missing Works"), including the above-

described paintings by Basquiat, Lichtenstein, Torres-Garcia,

Poliakoff, and the Togatus. After a search of the museums and

institutions in Brazil for the Missing Works, the Sao Paulo Court ordered that a request be made to INTERPOL for international assistance in locating the Missing Works.  The Missing Works are listed on the INTERPOL database under file number 2006/36298 (the "INTERPOL List").

8.   From in or about November 2006 up to and including in or about September 2007, the Defendant-in-rem Artworks were shipped or transported into the United States from international destinations, as follows:

a.   On or about December 1, 2006, a crate containing the Defendant-in-rem Lichtenstein, the Defendant-in-rem Torres-Garcia, and the Defendant-in-rem Poliakoff (the "December 2006 Shipment") entered the United States from the Netherlands in a Federal Express shipment arranged by Crown Relocation B.V., Gildenweg 18, Zwijndrecht, Netherlands ("Crown Relocation"), an international shipping company.  Crown Relocation was acting on behalf of the artworks' alleged owner, a Panamanian company called Broadening-Info Enterprises, Inc. ("Broadening-Info").  The crate containing the three artworks was delivered to The Fortress, a secure storage facility located in Long Island City, New York ("Fortress-NY").

b.   Mark III International ("Mark III"), a freight forwarding company, arranged to transport a shipment containing the Defendant-in-rem Basquiat from the Netherlands to the United States

8

on or about August 21, 2007 (the "August 2007 Shipment"), and prepared the importation documents for the shipment's entry into John F. Kennedy Airport, in Queens, New York ("JFK"). Mark III's office in London received the order to ship the painting from Mark III's customer Globenet B.V. Holland ("Globenet"). Globenet was contracted to ship the painting by DHL, on behalf of Crown Relocation, which was acting on behalf of Broadening-Info. The August 2007 Shipment containing the Defendant-in-rem Basquiat was delivered to a storage facility operated by Day & Meyer, Murray & Young ("Day & Meyer") in New York, New York.

c.   On or about September 11, 2007, a crate containing the Defendant-in-rem *Togatus* entered the United States from the Netherlands in a Federal Express shipment arranged by Crown Relocation (the "September 2007 Shipment"), which was acting on behalf of Broadening-Info. The crate containing the Defendant-in-rem *Togatus* was delivered to Day & Meyer's storage facility.

9.   The importation of the Defendant-in-rem Artworks was subject to the laws enforced by U.S. Department of Homeland Security, Customs and Border Protection ("Customs"), which are set forth in Title 19 of the United States Code ("U.S.C."), and the accompanying regulations in Title 19 of the Code of Federal Regulations ("C.F.R.").

a.   19 U.S.C. §§ 1481, 1484 and 1485 provide the requirements by which merchandise may be imported into the United

9

States.  Under Section 1484, an importer or its agent must "make
entry" by filing the required documentation with Customs to allow
Customs to determine whether the imported merchandise can be
released.

b.  Section 1485(a) provides:

Every importer of record making an entry under the
provisions of section 1484 of [Title 19] shall make
and file or transmit electronically therewith, . .
. a declaration under oath, stating--

(1)  Whether the merchandise is imported in
pursuance of a purchase or an agreement to purchase,
or whether it is imported otherwise than in
pursuance of a purchase or agreement to purchase;

(2)  That the prices set forth in the invoice
are true, in the case of merchandise purchased or
agreed to be purchased; or in the case of
merchandise secured otherwise than by purchase or
agreement to purchase, that the statements in such
invoice as to value or price are true to the best of
his knowledge and belief;

(3)  That all other statements in the invoice or
other documents filed with the entry, or in the
entry itself, are true and correct; and

(4)  That he will produce at once to the
appropriate customs officer any invoice, paper,
letter, document, or information received showing
that any such prices or statements are not true or
correct.

c.  19 C.F.R. § 128.25 identifies the criteria for
merchandise that must be declared pursuant to formal entry
procedures under Section 1484.  Formal entry is required for all
shipments over the $2,000 monetary limit set out for informal entry
procedures, and any shipment for which the informal entry

10

procedures may not be used.

d.   19 C.F.R. § 128.24 states that informal entry procedures generally may be used for shipments not exceeding $2,000 in value which are imported by express consignment operators and carriers.  Informal entry procedures still require the filing of customs documentation unless the merchandise is valued below $200.

e.   Under 19 U.S.C. § 1321(a) and 19 C.F.R. § 128.24(e), shipments valued at $200 or less can be passed into the United States free of duty and tax.

f.   Under the Customs laws, although original artwork is not subject to duty, the correct value of artwork must be declared and formal entry must be made for any artworks whose value exceeds the exemptions granted under the informal entry process.

10.   The Defendant-in-rem Artworks are all valued well over $2,000, and as such, each required formal entry.  The values listed in the Cid Databank for the Defendants-in-rem Lichtenstein, Poliakoff and Torres-Garcia are each in the hundreds of thousands of dollars.  The Cid Databank valued the Basquiat at $825,000, and the painting recently was appraised at approximately eight million dollars.  The Cid Collection purchased the Defendant-in-rem *Togatus* for 650,000 Euros and the Cid Databank valued the statue at $772,960.  All of the Defendant-in-rem Artworks were therefore subject to the formal entry requirements set forth in the Customs

11

laws.

11.   Despite the formal entry procedures required for all of the Defendant-in-rem Artworks, the documentation that accompanied the Defendant-in-rem Artworks did not comply with those required procedures. Documents concerning the December 2006 Shipment, which contained the Defendants-in-rem Lichtenstein, Poliakoff and Torres-Garcia, include the following:

a.   A summary of the original Federal Express airbill number 857258025808 prepared in connection with the December 2006 Shipment (the "December 2006 Airbill") identifies the shipper as Crown Relocation.   The indicated destination is Fortress-NY, at 49-50 (although the correct address is actually 49-20) 5th Avenue, Long Island City, New York.

b.   The December 2006 Airbill attaches an invoice from Broadening-Info (the "December 2006 Invoice"), which described the contents of the December 2006 Shipment as:

(I)  a painting titled "Natura Morta" by the artist "Filippo de Pisis (1896-1956)" valued at "USD 80,00";

(II) a painting titled "Composizione" by the artist "Osvaldo Licini (1894-1954)" valued at "USD 50,00";

(III) a painting titled "Night" by the artist "Martin Kippenbangen (1953-1997)" valued at

"USD 100,00."

Below the descriptions of the paintings the December 2006 Invoice states "value for custom purpose only" and "the above items has [sic] no commercial value." The invoice bears a handwritten authorized signature on behalf of Broadening-Info. The December 2006 Airbill, which was prepared on the basis of information in the December 2006 Invoice, describes the commodity being shipped as "paintings" with a total value for customs of $230.

12. The paintings in the December 2006 Shipment were not the artworks listed in the December 2006 Invoice. Fortress-NY received the December 2006 Shipment for the account of A.M. Barral Fine Art ("A.M. Barral") at 357 East 57th Street in New York, New York, formerly known as Barral Mandiola Fine Art Advisory LLC ("A.M. Barral Fine Art"). After the December 2006 Shipment arrived, a representative of A.M. Barral contacted personnel at Fortress-NY and instructed them to uncrate what A.M. Barral referred to as "the Lichtenstein." When Fortress-NY informed A.M. Barral that it did not have any records of receiving a Lichtenstein on its behalf, A.M. Barral instructed Fortress-NY to uncrate the December 2006 Shipment. After uncrating the works, Fortress-NY discovered that the contents of the shipment were not the paintings described in the documentation, but instead were works by the artists Roy Lichtenstein, Joaquin Torres-Garcia, and Serge Poliakoff.

13

13.   The December 2006 Invoice thus falsely stated, among other things:   (i) the painting titles; (ii) the names of the prominent artists who painted the artworks; (iii) the value of each artwork and the combined value of all three artworks; and (iv) each painting's country of origin.

14.   The documentation that accompanied the August 2007 shipment, which contained the Defendant-in-rem Basquiat, was similarly false.   The documents included two invoices, a house waybill, and a master air waybill, all of which contained false statements.

a.   An invoice from Crown Relocation dated August 17, 2007 (the "August 2007 Crown Invoice")) described the shipment as:

(I)   a "painting (natural)";

(II) with a value of "USD 100,00" and the following declaration: "VALUE ONLY FOR CUSTOMS PURCH. NOT FOR RESALE. FREE OF CHARGE.   NO COMMERCIAL VALUE";

(III) with "the Netherlands" as the country of origin;

(IV) sent from the company "Crowne Relocations" in the Netherlands; and

(V)   bearing an illegible signature.

b.   An invoice from Broadening-Info (misspelled on

14

the invoice as "Broading-Info Enterprises") that accompanied the August 2007 Shipment (the "August 2007 Broadening Invoice") also listed the item to be shipped as a "Painting," the description of goods as "Natural," the country of origin as the "Netherlands," and the value as "US$ 100.00." The August 2007 Broadening Invoice also stated that "the above item has no commercial value," and bore an illegible signature.

       c.   The house waybill and master air waybill that accompanied the August 2007 Shipment included, among other information, the items set forth in paragraphs 14(a) and (b) above. Upon information and belief, the house waybill and the master air waybill were prepared on the basis of the information in either the August 2007 Invoice, the Broadening Invoice, or both.

       d.   Neither of the August 2007 Invoices properly identified (i) the title of the painting; (ii) the fact that the painting was by Basquiat, a prominent modern artist; (iii) the true value of the painting; or (iv) the fact that the painting originated in the United States.

    15.   Similarly false statements appear on the documentation that accompanied the September 2007 Shipment, which contained the Defendant-in-rem *Togatus*.

       a.   An invoice from the packing documentation attached to the shipping crate, from Broadening-Info (the "September 2007 Invoice"), described the shipment as:

(I)   an "Ornament";

(II) described as "Women";

(III)with a rate value of "US$100.00" and the following declaration: "THE ABOVE ITEM HAS NO COMMERCIAL VALUE";

(IV) with "the Netherlands" as the country of origin; and

(V)   bearing an illegible signature.

b.    The Federal Express International Air Waybill, Tracking Number 8578 283 3015 (0461) (the "September 2007 Waybill"), which on information and belief was prepared, in part, on the basis of the September 2007 Invoice, described the sculpture as: "Statue," (value for Customs) "US$100.00."

c.    The September 2007 Invoice falsely stated: (i) the title of the sculpture; (ii) the description of the sculpture; (iii) the true value of the sculpture; and (iv) the sculpture's country of origin.  The September 2007 Waybill falsely declared the value of the sculpture.

16.  The December 2006 Invoice, the August 2007 Invoices, and the September 2007 Invoice served as the principal documents upon which the December 2006 Shipment, the August 2007 Shipment, and the September 2007 Shipment, respectively, were accepted and released by Customs.   The shipments were released upon invoice, with no further Customs documentation required, because the

16

Shipments, as presented, were eligible for the informal entry process.   The December 2006, August 2007 and September 2007 Invoices thus were the documents that facilitated the entry of the December 2006, August 2007 and September 2007 Shipments, respectively, into the United States, and upon which the contents of the Shipments, i.e., the Defendant-in-rem Artworks, were released into the commerce of the United States.

17.   On November 7, 2007, agents from United States Immigration and Customs Enforcement, Department of Homeland Security ("ICE"), seized the Defendant-in-rem Basquiat from 1166 Second Avenue, New York, New York.   On June 20, 2008, agents from ICE seized the Defendant-in-rem *Togatus* from 1166 Second Avenue, New York, New York.   On July 8, 2008, agents from ICE seized the Defendant-in-rem Lichtenstein from a residence at 453 North Faring Road, Los Angeles, California 90077.   The Defendants-in-rem Basquiat, *Togatus* and Lichtenstein are in ICE custody pending the outcome of the instant forfeiture action.   In July 2008, Swiss authorities detained the Defendant-in-rem Poliakoff in Geneva, Switzerland.

### III.   FIRST CLAIM FOR FORFEITURE

18.   Incorporated herein are the allegations contained in paragraphs 1 through 17 of the Second Amended Verified Complaint.

19.   The Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to Section 1595a(c) of Title 19, United States Code, which provides in pertinent part:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
> (1) The merchandise shall be seized and forfeited if it
>     (A) is stolen, smuggled, or clandestinely
> imported or introduced.

20.   Section 542 of Title 18, United States Code, prohibits the smuggling of goods into the United States by means of false statements.  The criminal penalties in Section 542 apply to:

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties.

18 U.S.C. § 542.

21.   The Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that they were imported by means of a fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of a false or fraudulent practice or appliance, or by a false statement in a declaration made without reasonable cause to believe

18

the truth of such statement, or by a false statement procured without reasonable cause to believe the truth of such statement, in violation of 18 U.S.C. § 542.

### IV.   SECOND CLAIM FOR FORFEITURE

22.   Incorporated herein are the allegations contained in paragraphs 1 through 21 of the Second Amended Verified Complaint.

23.   The Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to Section 1595a(c) of Title 19, United States Code, which provides in pertinent part:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
> (1) The merchandise shall be seized and forfeited if it
>     (A) is stolen, smuggled, or clandestinely imported or introduced.

24.   Section 545 of Title 18, United States Code, prohibits the smuggling of goods into the United States.   The criminal penalties in Section 545 apply to:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces of attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or
>
> Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of the such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

19

18 U.S.C. § 545.

25. The Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that the Defendant-in-rem Artworks were introduced by one or more persons who, knowingly and willfully, with intent to defraud the United States, smuggled, or clandestinely introduced into the United States merchandise which should have been invoiced, or made out or passed, or attempted to pass, through the customhouse a false, forged, or fraudulent invoice, or other document or paper, in violation of 18 U.S.C. § 545. The Defendant-in-rem Artworks also are subject to seizure and forfeiture pursuant to 19 U.S.C. § 1595a(c) because there is probable cause to believe that the Defendant-in-rem Artworks were introduced by one or more persons who, fraudulently or knowingly imported or brought the Defendant-in-rem Artworks into the United States contrary to law, or received, concealed, bought, sold, or in any manner facilitated the transportation, concealment, or sale of the Defendant-in-rem Artworks after importation, knowing the same to have been imported or brought into the United States contrary to law, in violation of 18 U.S.C. § 545.

## V.   THIRD CLAIM FOR FORFEITURE

26. Incorporated herein are the allegations contained in paragraphs 1 through 25 of the Second Amended Verified Complaint.

27.   The Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to 18 U.S.C. § 545,   which directly authorizes the forfeiture of "merchandise introduced into the United States in violation of" that section.   18 U.S.C. § 545.

## VI.   FOURTH CLAIM FOR FORFEITURE

28.   Incorporated herein are the allegations contained in paragraphs 1 through 27 of the Second Amended Verified Complaint.

29.   Section 981(a)(1)(C) of Title 18, United States Code subjects to forfeiture:

> Any   property,   real   or   personal,   which constitutes   or   is   derived   from   proceeds traceable to . . . any offense constituting 'specific unlawful activity' (as defined in section   1956(c)(7)   of   this   title),   or   a conspiracy to commit such offense.

30.   Section 1956(c)(7)(A) of Title 18, United States Code, provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title," and § 1961(1) includes Sections 542 and 545 of Title 18 among the enumerated offenses.

31.   There is probable cause to believe that the Defendant-in-rem Artworks are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to violations of Sections 542 and 545 of Title 18, United States Code.

21

32.  By reason of the above, the Defendant-in-rem Artworks became and are subject to forfeiture to the United States of America.

WHEREFORE, plaintiff United States of America prays that process be issued to seize and enforce the forfeiture of the Defendant-in-rem Artworks and that all persons having an interest in the Defendant-in-rem Artworks be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture to the Defendant-in-rem Artworks to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated:     New York, New York
           October 8, 2008

                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the Plaintiff
                              United States of America

BY:    _____
                              SHARON E. FRASE (SF-4906)
                              Assistant United States Attorney
                              One St. Andrew's Plaza
                              New York, New York 10007
                              Telephone: (212) 637-2329

22

## VERIFICATION

```
STATE OF NEW YORK              )
COUNTY OF NEW YORK             )  ss:
SOUTHERN DISTRICT OF NEW YORK  )
```

SETH TAYLOR, being duly sworn, deposes and says that he is a special agent with United States Immigration and Customs Enforcement, and as such has responsibility for the within action, that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge information and belief.

The source of his information and the grounds of his belief are official records and files of the United States and information obtained directly by deponent during his investigation.

_____
SETH TAYLOR
Special Agent
United States Immigration
and Customs Enforcement

Sworn to before me this
21ˢᵗ day of October, 2008
_____
NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010

23