UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v. 08 CV 01511 (RJS)

THE PAINTING KNOWN AS "HANNIBAL", et al.,

Defendants.

------------------------------x

April 23, 2012
10:35 a.m.

Before:

HON. RICHARD J. SULLIVAN,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the Southern District of New York
Attorneys for Plaintiff
BY: JASON P. HERNANDEZ
Assistant United States Attorney

NESENOFF & MILTENBERG, LLP
Attorneys for Defendant Broadening-Info Enterprises, Inc.
BY: PHILIP A. BYLER

JOSEPH H. LILLY, III
Attorney for the Trustee for Banco Santos

THE DEPUTY CLERK: All rise.

THE COURT: Okay, have a seat.

(Case called)

MR. HERNANDEZ: Good morning, your Honor, Jason Hernandez for the United States.

THE COURT: Okay, Mr. Hernandez, good morning.

MR. BYLER: Good for the claimant Broadening, Phil Byler.

THE COURT: Okay, Mr. Byler, good morning to you.

MR. BYLER: Good morning.

THE COURT: For the --

MR. LILLY: For the Trustee of Banco Santos, Joseph Lilly.

THE COURT: All right, Mr. Lilly, I got your request to substitute counsel.

MR. LILLY: Thank you.

THE COURT: And I've signed that, so that will get docketed.

MR. LILLY: I appreciate that. Thank you, sir.

THE COURT: Today I'm not sure what we're going to need from you going forward.

MR. LILLY: Yeah.

THE COURT: This was a case that I guess I issued an opinion in back in May of 2010. It then went up on appeal, and the Court of Appeals affirmed me on everything that I felt was

contested, but remanded for the sole purpose of determining whether or not the second element of the cause of action has been met; and, that is, whether the merchandise was stolen, smuggled or clandestinely imported or introduced.

It seems to me pretty clear that the evidence that would establish this as contrary to law would also establish that the paintings in question were clandestinely imported or introduced, but maybe I'm missing something.

So, tell me.

MR. BYLER: No. Broadening does not agree with that.

THE COURT: All right.

MR. BYLER: We believe that, assuming you have a violation of 18 U.S.C. Section 542, that that does not automatically mean you have the prerequisites for forfeiture under 19 U.S.C. Section 1595. This, remember, was on summary judgment.

THE COURT: Right.

MR. BYLER: And with respect to the other part of the case, it was after the Second Circuit had ruled in Davis. So a lot of the focus on the case on CAFRA, well, became academic.

THE COURT: Right.

MR. BYLER: And what troubled the Appellate Court was, well, wait a minute, does there be a -- is there a ground for forfeiture under 19 U.S.C. 1595 on this record, you know, based on what the government showed would be a violation of 18 U.S.C.

542.

Our position was that this was not clandestinely imported, it was not smuggled, and that's what we believe on summary judgment the record showed. And that's what we believe requires that if the Government's going to pursue forfeiture under 1595, it will need, as it did in Davis, by the way, a trial. And that's our position. We believe that the precedent doesn't support looking at 542 and, therefore, you meet 1595.

THE COURT: I don't think you automatically meet it. I think the issue is on these facts, do you. And what I found, and what I don't think is in dispute, is that the shipments were valued at less than $2,000, right, and that the actual value of the paintings was north of, you know, a million dollars probably, right?

MR. BYLER: Well, on the alleged statement by the government. However, these were not clandestinely imported. They were openly advertised. This record had other elements to it in terms of the importation. There was no disguise on the part of Broadening in terms of what was it doing in terms of bringing the items into the United States. And that's why the Appellate Court stopped and said, well, wait a minute, on this record, it's not clear that we have a basis for summary judgment. I underscore the word summary judgment, for forfeiture. Our position is if you establish something under 18 U.S.C. 542, and this was something was picked up by the

Appellate Court and noted by an appellate judge, that you would have a fine, you would have a penalty, but it wouldn't be forfeiture.

THE COURT: No, I get all that. I read the opinion. I've read the opinion. The issue is whether or not there are factual disputes or whether the record is established now such that summary judgment can be granted with respect to the remaining element. You're saying, your position is no.

MR. BYLER: No, summary judgment cannot be granted properly, and that you need a trial as you did in Davis.

THE COURT: I get that. If the summary judgment is not proper, you need a trial, I get that.

Let me hear from the government.

MR. BYLER: Sure.

MR. HERNANDEZ: Judge, I think that you've described the issue why we're here accurately.

I think, though, that the facts that are necessary for you to make the finding that the Hannibal and Togatus were clandestinely imported or smuggled are well established. Your Honor hit on one of them, which is that Hannibal, which is valued at $8 million, was imported at a claim of $100.

THE COURT: Well, it's even worse than that. The claimant paid a million dollars.

MR. HERNANDEZ: Right. Claimant paid over a million I think, and it was valued at over eight million by an appraiser.

THE COURT: Right.

MR. HERNANDEZ: And it was declared as $100.

THE COURT: Yes.

MR. HERNANDEZ: In addition to that, there was also -- the painting itself was not described by its proper title --

THE COURT: Yes.

MR. HERNANDEZ: -- or by the artist, all those different facts.

THE COURT: Yeah, no, look, that's what it seems to me.

I mean, on the other hand, if that were so obvious then, I'm not sure why the Second Circuit is sending it back. I mean, they would be in the same position as I to say, h'mm, given those facts, you've met the second element.

MR. HERNANDEZ: Well, Judge, we can -- I think we can really only go off of their opinion. And what their opinion says is that, you know, we reviewed Judge Sullivan's order granting summary judgment and he doesn't address this head on.

At oral argument the government made the same point that you're making, which is that once Judge Sullivan made all these other findings, it kind of intellectually follows that this is clandestinely imported and smuggled. And from my recollection, Judge Katzmann was, in particular, very skeptical of the argument that these items were not smuggled or clandestinely introduced based on some precedent that he had

cited. But I think that panel felt that for them to properly review the summary judgment order, they wanted some specific findings from your Honor. And we addressed this in our, primarily, in our reply brief on summary judgment. We provided a number of different cases from different circuits that showed that when you bring something in by fraud, when you misrepresent what it is, that that meets the definition of smuggling and clandestinely introduced.

So our position would be that, based on the facts that you already found, and that the Circuit has already affirmed on, what remains is to make the legal connection, which is that based on these facts you have -- the government has met its burden for summary judgment, that this is smuggling and clandestinely introducing goods, and that portion of the statute's met.

THE COURT: All right. Well, so what do you propose we do going forward, and I'll ask Mr. Byler the same question?

MR. HERNANDEZ: Your Honor, I think that this issue was briefed, and I think that it's presented for the Court. It was presented for the Court, so you could make the decision based on the briefs that are already before the Court. But the government would be happy to provide whatever supplement, if your Honor deems necessary, or come for argument where we're willing to take, of course, whatever direction the Court wants. But I don't think it's necessary that we have additional

briefing or argument.

THE COURT: All right. And --

MR. BYLER: Okay. Oh, I'm sorry.

THE COURT: Go ahead.

MR. BYLER: Oh.

THE COURT: Yes.

MR. BYLER: Thank you, your Honor.

Our position is that at this point we should have some additional briefing.

THE COURT: We should or should not?

MR. BYLER: Should.

THE COURT: Should.

MR. BYLER: This issue was briefed below you -- before you. It was briefed before the Appellate Court. So it wasn't as if the different positions of the government and Broadening weren't before the Appellate Court with respect to this issue. They were. And the Appellate Division -- excuse me -- the Appellate Court, Second Circuit obviously felt that it could not proceed without specific findings.

I understand what you're saying. However, I think there's other elements for the record. And I think before we have to deal with what would be an appeal, if you just proceeded at this point and followed what your first instinct is, that we should do I think a lawyerly and judicial thing is, wait a minute, let's have briefing and let's focus on the

issue, with all due respect, so that the record is very clear and the reasoning is very clear as to, you know, whether there is or not a basis to order forfeiture under 1595. That's what's at issue.

As I, you know, indicated before, we don't think it could be done on summary judgment, given this record.

THE COURT: Okay. But you're saying you'd like another crack at briefing.

MR. BYLER: Yeah. And reason is that while you can point to this fact or that fact and tie together a rationale, remember on summary judgment you have a larger record. And summary judgment isn't decided on the ground that, well, you can have a rationale for deciding one way. No. It is whether there are any material issues of fact. That's a different question. One can argue that at trial the position you took might convince a jury. But on summary judgment, a judicial decision, the question is whether on the whole record there are material issues in fact. And with all due respect, your Honor, that is what Broadening believes, and that's why we think it's important at this point to have some brief, at least some briefing on that issue.

THE COURT: But what are the issues of fact?

MR. BYLER: Whether or not what was done here on the whole record was something that satisfied --

THE COURT: No, that's not an issue of fact.

MR. BYLER: No.

THE COURT: You're restating what the issue of law is. But what are the issues of fact?

MR. BYLER: But we had a fall record.

THE COURT: So tell me what are the issues of fact.

MR. BYLER: An affidavit of Mr. Carnegie. Basically the point was, here, this is what happened. By the way, we, Broadening, weren't responsible for the specific importation, but this is what happened. There was no effort to conceal. There was no effort to smuggle. We advertised publicly these items in the United States at the time that we were bringing these items into the United States.

Given what's in the record, particularly Mr. Carnegie's affidavit, that you cannot, we believe, conclude that you satisfy the elements of 1595 that there was not clandestine importation. There was certainly not snuggling. And the case law, which, you know, Government and Broadening did argue about in the briefs and before the court, doesn't get you to the point of a 1595 violation based solely on a 1542 violation.

THE COURT: But it sounds to me like there's no dispute as to facts. It sounds to me there's a dispute as to the conclusions to be drawn from those facts. But what facts are you alleging that Mr --

MR. BYLER: I think I just alluded to them. No, I

don't agree with that assessment of the record.

THE COURT: Mr. Hernandez --

MR. BYLER: I mean what you're describing, no, I don't. I'm sorry, your Honor I --

THE COURT: So what are the facts that are in dispute, not the conclusions, the facts?

MR. BYLER: No, I understand. As is set forth in Mr. Carnegie's affidavit, when they brought in the two items of art into the United States --

THE COURT: Right.

MR. BYLER: -- they did this openly.

THE COURT: All right. Do you dispute that, Mr. Hernandez?

MR. HERNANDEZ: We do.

THE COURT: So that's a disputed issue of fact that they did it openly.

MR. HERNANDEZ: Well, we -- I think we dispute its relevance.

The fact that Mr. Carnegie advertised that there was going to be a painting being auctioned is completely separate from the narrow legal question here, which is, when an item is misdescribed, misrepresented as it passes through Customs --

THE COURT: Right.

MR. HERNANDEZ: -- is that item being smuggled or clandestinely imported. So, I mean there may be a dispute, but

it's not a material dispute about the narrow issue for the remand.

And I also think that it would be wise to cabin it just to what the issue on the remand is. All the other facts that the Court of Appeals found are satisfactory and meet the materiality requirement, for example, those are not in dispute. Those are not open to further debate. The law of the case settles that.

So I don't think there's a factual dispute with respect to the fact that it was the Painting and the Togatus were misrepresented. I think that's clearly been established, and it's really, frankly, not up for further debate because it's already been resolved by the Circuit.

The question is, when you have a painting that's misrepresented grossly as to its value, not identified by its name or by its famous artist, when that passes through Customs, is it being smuggled or clandestinely introduced? So I think that it's a narrow legal question that can be resolved on the current briefing, but I mean I understand Mr. Byler wants to maybe re-present the argument.

THE COURT: All right.

MR. BYLER: May I add, your Honor, that argument was presented to the Second Circuit that it was a narrow legal issue. Second Circuit obviously did not feel comfortable in concluding that.

THE COURT: Well, let's just remember what the Second Circuit said, which is, "Because we are unable to assess on the record before us whether the district court found that the Defendants-In-Rem were 'stolen, smuggled or clandestinely imported or introduced' as required under 19 U.S.C. Section 1595(a)(c), we remand the case to the district court pursuant to the procedures set forth in United States versus Jacobsen for clarification of its decision and for additional findings of fact or conclusion of law as necessary."

So I don't think anybody should read too much into what they said. I think they're basically saying if I think the current record is good enough, then I just should need to be explicit that that's what I think, and then I guess they'll take another bite at the apple, if there's an appeal. Or if I think there needs to be additional facts and those facts have to be resolved by a fact finder because they're disputed, then I guess we'll see.

Mr. Lilly, do you have a dog in this fight at this point?

MR. LILLY: Your Honor, our position is that the art works were clandestinely brought in for the reasons that have already been expressed here. And from the Trustee's point of view, since the Trustee believes that the art works were acquired with funds that were illicitly taken from Banco Santos, that's another element. It may not reach the narrow

grounds that are reflected in the statute, but it's another element to the culpability and the smug -- the clandestineness of the importation of the art works, your Honor.

THE COURT: All right. So do you want to be -- do you want an opportunity to make a submission as well?

MR. LILLY: Sure. Yes, your Honor.

THE COURT: All right, so let's then talk about timing. I think it's only fair to allow Mr. Byler and any other party who wants to make a submission, to make a submission. So let's talk about timing and the order of submissions. We can do them all at the same time or we can do them -- I guess it's the Government's summary judgment motion, so I guess the government would go first and then Mr. Byler. And I'm not sure are we'd have you go, Mr. Lilly, at the same time. Maybe after the whole thing?

MR. LILLY: Well --

THE COURT: Have you guys thought about this or discussed it amongst yourselves?

MR. BYLER: Well, we did have a brief discussion. And what we said today in court is pretty much what we said to each other on the phone. We didn't consider the question of the Trustee. It sounds like I would want a response to the Trustee if he takes the position he does, because that's not a summary judgment.

Our position from the start has been what he is

willing to do is not a summary judgment issue. That would have to be tried. And the Government's case was always very different in terms of its summary judgment approach. I think it makes sense, though, for the government to go first so it can lay out why the government believes there are legal and factual grounds here on summary judgment, I do underscore the words on summary judgment, for why 1595 is satisfied, and then I can respond to it.

THE COURT: We're not getting into all of 1595.

MR. BYLER: Oh, no, no, no.

THE COURT: Just getting into --

MR. BYLER: The remand.

THE COURT: One phrase.

MR. BYLER: Yeah, remand question.

THE COURT: Yeah. Okay. So when do you want to make your submission, Mr. Hernandez?

MR. HERNANDEZ: Judge, I think we could have our submission ready in ten days.

THE COURT: Okay, that's fine. 10 days is what?

THE DEPUTY CLERK: May 3rd is a Thursday or --

THE COURT: Let's say May 4th is a Friday.

Okay. And, Mr. Byler, how long do you think you need?

MR. BYLER: What day is ten days from now? I'm sorry.

THE COURT: May -- well, May 4th is 11 days. Because it's a Friday, I think it's always easier to just make --

MR. BYLER: Okay. I have a trial starting on May 14th, that's why I'm calculating in my mind, because being a trial lawyer and, you know, it's consuming. I don't want to drag it out. On the other hand, I am a little concerned about meeting May 14th. I don't mind giving the government a little --

THE COURT: I'd give you more time then if you need it. How much time do you think you need?

MR. BYLER: May 21st. Is that okay?

THE COURT: That's fine. I can give you more than that if you want. I would have thought 30 days.

MR. BYLER: 30 days I would appreciate, please.

THE COURT: I mean, there's no -- I mean, everybody wants to get this resolved.

MR. BYLER: Oh, I understand.

THE COURT: Myself included. But there's no prejudice that's flows making this 14 days or 30 days, right?

MR. BYLER: No. I would appreciate the 30 days in all honesty because I, in addition to the trial, I have post trial papers to file in another case, so that's before the trial.

THE COURT: So June 3rd? June 4th is a Monday, okay, so.

MR. BYLER: Thank you very very much, your Honor.

THE COURT: You don't have to thank me. That's fine. So defendants by June 4th. And then why don't we have -- if

you're going to do something, when do you think you want to do it, Mr. Lilly?

MR. LILLY: I'd like to see what the government says, but certainly I could --

THE COURT: Would you want to wait after the reply brief, then weigh in or --

MR. LILLY: No, no, not after the reply brief, just -- after the primary brief of the government, I could turn it in the same time as.

THE COURT: June 4th.

MR. LILLY: June 4th.

THE COURT: All right. Then we'll have I guess the Government's reply, and I'll allow the defendants to make a reply then after that as well to the defendant would be making -- not the defendant, Defendant-In-Rem, I guess the claimant, Broadening would be making a reply just to Mr. Lilly's.

MR. BYLER: Yes. Thank you, your Honor.

THE COURT: Okay, so that'll be ten days after that, all right. But then you got a little bit of daylight --

MR. BYLER: Yes, yes.

THE COURT: -- Mr. Byler, so.

MR. BYLER: Thank you.

THE COURT: All right. So June 15th is a Friday then, okay, and I'll memorialize this, I'll put it on -- I'll docket

it, but government by May 4th, defense and the Trustee by -- Trustee, right, by June 4th. Then replies from the government to Mr. Byler's submission and Mr. Byler to the Trustee's submission by June 15th, okay.

And I guess, Mr. Hernandez, you can also respond to the Trustee's submission at the same time, make it one brief. Okay, see where we are.

Let's schedule this for an oral argument too, just so we have it down. It may be that I don't need one, but I think it's better to schedule it. And do you know what your summer plans are like, you folks?

MR. BYLER: I'm a little tight in June, but July does open up, thank God.

THE COURT: Would mid-July be all right? You think if I schedule this, an oral argument in mid-July, would that be all right?

MR. BYLER: Yes, absolutely.

THE COURT: Mr. Hernandez.

MR. HERNANDEZ: I have a trial on July 23rd, so if we could just give me a little bit of buffer on the earlier part of June -- July, rather, that would be great.

THE COURT: Okay.

MR. BYLER: That's fine with me.

MR. LILLY: That's fine. Early is fine with me.

THE COURT: How about 11:30 on Friday, July 13th,

unless you're superstitious?

MR. HERNANDEZ: It cuts both ways.

THE COURT: July 13th at 11:30, okay. And as I said, I'll issue an order that memorializes these dates, and hopefully then we can wrap this up.

Anything else we should cover today?

MR. HERNANDEZ: No, your Honor.

MR. BYLER: No, your Honor.

THE COURT: No all right.

MR. BYLER: Thank you very much.

MR. LILLY: Thank you, your Honor.

THE COURT: Good to see you again. I guess, I mean it's not ideal to have it go up and come back down, but we'll fix it.

Okay let me thank the Court Reporter. If you need a copy of the transcript, you can take that up with the Court Reporter now.

(Adjourned to July 13, 2012 at 11:30 a.m.)